CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| SHAWN TOLBERT, | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00530 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| KARL H. KLETZING, et al., | ) | Senior United States District Judge |
| Defendants. | ) | |

### MEMORANDUM OPINION

Shawn Tolbert, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth and Fourteenth Amendments. The case is presently before the court on motions to dismiss filed by defendants Erin H. Dove, Karl H. Kletzing, Saqib M. Shah, and Dr. Waddle, ECF No. 32, and by defendants Lisa Barber, Hunter Frank, Denise Haun, Adetokunbo Ladenika, and Jacqeline Taylor, ECF No. 36. For the reasons set forth below, ECF No. 32, is **DENIED**, and ECF No. 36, is **DENIED**.

### I.    Background

The following summary of the facts is taken from the complaint, amended complaint and the accompanying exhibits.[1] For purposes of the motion to dismiss, the facts are presented in the light most favorable to Tolbert. See Washington v. Hous. Auth. of the City of Columbia, 58 F.4th 170, 177 (4th Cir. 2023) (noting that a court reviewing a motion to dismiss must

---

[1] The court may consider exhibits attached to the complaint when ruling on a motion to dismiss. See Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

"accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff"). The court notes that Tolbert filed a complaint followed by an amended complaint, which the court construes as a supplement to the complaint. See Henderson v. Tower Fed. Credit Union, No. 1:23-CV-01314-JRR, 2024 WL 1722555, *1 n.1 (D. Md. Apr. 22, 2024) (construing pro se amended complaint as supplement to complaint); see also Morings v. Wells, No. 7:16-CV-00139, 2018 WL 2124113, *1 n.2 (W.D. Va. May 8, 2018) (in pro se case where "[t]he amended complaint does not try to alter the allegations or claims in the original complaint but merely seeks to more accurately address the claims as to the correct defendants," deeming "the amended complaint as incorporating the original complaint" and "consider[ing] both the original and amended complaints as Plaintiff's pleading.").

Tolbert's claims arise from events that occurred at LewisGale Hospital, 2400 Lee Highway, Pulaski, VA 24301 on August 30-31, 2022. ECF No. 1-1 at 1; ECF No. 12 at 3. Tolbert alleges that Karl H. Kletzing, Erin H. Dove, Saqib M. Shah, "Dr. Waddle," Lisa Barber, Denise Haun, Adetokunbo Ladenika, Hunter Frank and Jacqueline Taylor, violated his Eighth and Fourteenth Amendment rights by being indifferent to his medical needs and providing inadequate medical care. ECF No. 12 at 3. Specifically, Tolbert alleges that defendant Kletzing, on August 30, 2022, was treating Tolbert for his injuries that were a "very serious condition… acute catatonia," for which the defendants wanted to put Tolbert in an intensive care unit ("ICU"). Id. at 5. Tolbert alleges Kletzing knew of Tolbert's condition and performed a "tactile and verbal" test that is "very painful," but which elicited no response from Tolbert. Id. Tolbert further alleges that a "Dr. Waddle" also performed the "painful test" on Tolbert. Id. at 8. Tolbert alleges that defendant Dove was working at the hospital when

Tolbert arrived and had been "informed" that Tolbert was injured, and unable to respond due to his acute catatonia. Id. at 6. Tolbert similarly alleges that defendants Shah and Ladenika were working at the hospital when Tolbert arrived, knew that Tolbert was seriously injured, and was being put on the list for the ICU. Id. at 7. Tolbert alleges that defendants Barber, Haun, Frank, and Taylor cared for Tolbert while he was at the hospital, and knew of the seriousness of his condition. Id. at 9-12. Tolbert alleges that the next day, August 31, 2022, and despite the fact he was still injured such that he did not know his own name and was not able to walk, defendants released Tolbert from the hospital "instead of giving [him] the proper treatment [he] needed." Id. at 5-6.

Tolbert attaches to his complaint a series of excerpts from medical records dated August 30 and 31, 2022. See ECF No. 1-1. Alongside these records, Tolbert offers supporting facts to expand on the medical record excerpts. See id. Tolbert states that acute catatonia is a "serious mental illness [where] someone cannot think or behave normally and often experience[s] delusions." ECF No. 1-1 at 5. Tolbert further alleges that defendant Ladenika recommended on August 31, 2022 that Tolbert be recommended for admission to the ICU. Id. Despite this recommendation, Tolbert's medical record excerpts indicate Tolbert was discharged to police custody that same day. See id. at 15. The timeline of these events is unclear in part due to the excerpted nature of the medical records Tolbert has attached to his complaint. For example, defendant Ladenika's notes recommending inpatient hospitalization are signed at 22:57, id. at 12, but defendant Taylor's record of Tolbert's discharge is listed as 20:30, id. at 15.

Based on these events, Tolbert filed this action under 42 U.S.C. § 1983. He seeks monetary damages from defendants in their individual capacities. ECF No. 12 at 4.

## II.    <u>Standard of Review</u>

Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> ECF Nos. 32, 36. To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (alteration in original) (internal quotation marks omitted) (quoting <u>Twombly</u>, 550 U.S. at 555, 557).

When a complaint is filed by a <u>pro se</u> litigant, it must be construed liberally. <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of <u>pro se</u> complaints are not, however, without limits." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). A <u>pro se</u> complaint "must still 'state a claim to relief that is plausible on its face.'" <u>Sakyi v. Nationstar Mortg., LLC</u>, 770 F. App'x 113, 113 (4th Cir 2019) (quoting <u>Jackson v. Lightsey</u>, 775 F.3d 170, 178 (4th Cir. 2014)).

### III.  <u>Discussion</u>

Tolbert seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional

rights, specifically, violations of his rights under the Eighth and Fourteenth Amendments. At

the time of the events giving rise to this complaint, plaintiff was an arrestee. <u>See</u> ECF No. 1-

1 at 10 (hospital notes describing circumstances of plaintiff's contact with police, including

that plaintiff had outstanding warrants); <u>id.</u> at 15 (hospital discharge notes stating that plaintiff

was discharged to the police to go to "jail/court").[2] Therefore, the court construes plaintiff's

complaint as brought under the Fourteenth Amendment. <u>See, e.g.</u>, <u>Cooper v. Dyke</u>, 814 F.2d

941, 948 (4th Cir. 1987) ("while the Eighth Amendment is properly invoked on behalf of those

convicted of crimes, it is the Due Process Clause of the Fourteenth Amendment that applies

to pretrial detainees"); <u>Davis v. Keller</u>, No. 7:23-CV-00593, 2024 WL 4326544, *5 (W.D. Va.

Sept. 27, 2024) (construing <u>pro se</u> plaintiff's complaint as brought under the Fourteenth

Amendment where plaintiff was a pretrial detainee and not a convicted prisoner).

"To state a claim under § 1983, a plaintiff must allege that he was deprived of a right

secured by the Constitution or laws of the United States, and that the alleged deprivation was

committed under color of state law." <u>Thomas v. Salvation Army S. Terr.</u>, 841 F.3d 632, 637

(4th Cir. 2016). A pretrial detainee's claim of deliberate indifference is brought pursuant to the

Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Stevens v. Holler</u>, 68 F.4th 921, 930-

---

2 The court notes that plaintiff does not specifically allege whether he was an arrestee, pretrial detainee, or
convicted prisoner at the time of the incidents in the complaint and amended complaint in this action. However,
the court construes the attachments to the complaint to indicate plaintiff's status as an arrestee. Additionally,
as defendants Barber, Haun, Ladenika, Frank and Taylor noted in their motion to dismiss, <u>see</u> ECF No. 36-1
at 1 n.1-2, plaintiff has filed two additional lawsuits regarding the series of events in this case—plaintiff filed a
lawsuit on the alleged events of his arrest, 7:23-cv-531, and a lawsuit on the alleged medical care he received
while imprisoned, 7:23-cv-534.

31 (4th Cir. 2023) (addressing a pretrial detainee's claim of deliberate indifference to serious medical needs). The Due Process Clause protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that ... appear excessive in relation to that purpose." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015). In Kingsley, the Supreme Court held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." Id. at 397. The Fourth Circuit concluded that "Kingsley's objective standard extends not just to excessive force claims; it applies equally to deliberate indifference claims." Short v. Hartman, 87 F.4th 593, 606 (4th Cir. 2023).

### a. Deliberate Indifference

To state a claim for deliberate indifference to a medical need, a pretrial detainee must plead that:

(1) they had a medical condition or injury that posed a substantial risk of serious harm;
(2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed;
(3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and
(4) as a result, the detainee was harmed.

Short, 87 F.4th at 611. Under this standard, the plaintiff is not required to demonstrate "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. Instead, a plaintiff need only "show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). Allegations of mere negligence are

"not enough" to meet this standard. Id. at 611-12.

The court concludes that, at this stage, it cannot dismiss plaintiff's complaint for failure to adequately plead deliberate indifference. Plaintiff has alleged that he suffered from "a very serious condition that was acute catatonia," which the excepted medical records substantiate. See ECF No. 1-1 at 10 ("Reason for Consult: Acute Catatonia"); id. at 11 ("Patient remained completely nonverbal… Presentation by the patient was consistent with nonmalignant retarded catatonia with elements of mutism, inhibited movement with severe psychomotor retardation, rigidity, negativism and staring."). Plaintiff has alleged that each defendant knew of plaintiff's condition or, at minimum, that plaintiff was injured. See ECF No. 12 at 5-12. Plaintiff has alleged that, due to the serious nature of plaintiff's condition, he needed to be placed into an intensive care unit, which the excepted medical records underscore. See ECF No. 1-1 at 5-7, 11. Despite this need, plaintiff alleges that each defendant allowed him to be released from the hospital anyway. See ECF No. 12 at 5-12; ECF No. 1-1 at 13, 15; see also ECF No. 1-1 at 5-7, 11 (noting no ICU beds available in-state, and because of plaintiff's charges, plaintiff "could not be transferred out of state" to an outside neurology unit at Wake Forest Baptist Health). Plaintiff alleges that as a result of defendants' inaction, plaintiff did not begin to "start functioning" as normal until six days after his hospitalization, and that at that point, he was still having "medical issues," such as "headaches, ringing of the ears, dizziness, and knees and elbows popping" that are now an "every[]day condition that I deal with forever." ECF No. 1-1 at 13.

Though the excepted medical records also demonstrate that upon discharge, plaintiff was "[s]tabilized/maintained" and "conversing with th[e] nurse," they reiterate that plaintiff

"cannot recall his name" and left the hospital in a wheelchair. ECF No. 1-1 at 14-15. Because plaintiff has demonstrated that each defendant knew or should have known about plaintiff's serious condition, failed to act to address plaintiff's condition, and that plaintiff suffered damages as a result, plaintiff has adequately pleaded deliberate indifference at this stage of the proceedings. In making this determination, the court emphasizes that its analysis is based on plaintiff's version of the facts as drawn from the complaint, amended complaint, and associated attachments. Upon a more fully developed record, including complete versions of the medical records that were attached as excerpts to the complaint, the parties may move for summary judgment if the record so supports.

### b. Acting Under Color of State Law

All defendants argue that, as a threshold matter, plaintiff's § 1983 claim fails because defendants did not act under color of state law as they are "private health care providers, working at a hospital that is not government owned or operated." ECF No. 36-1 at 4-5; ECF No. 33 at 5 ("Section 1983 applies to persons who act under color of law. It does not apply to four private physicians working at a private, non-governmental hospital."). Defendants do not provide support for their arguments on this point. See generally ECF Nos. 33, 36-1.

"The Fourth Circuit has held that a private physician without any contractual or employment obligation with the state nonetheless acts under the color of state law by voluntarily accepting a referral to treat a prisoner." Jeffers v. Woodson, No. 7:20-CV-00060, 2021 WL 849234, *3-4 (W.D. Va. Mar. 5, 2021) (citing Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994)). Despite this, the Fourth Circuit has left open the question of whether emergency room physicians in private hospitals act under color of state law when treating

prisoners brought into the emergency room. See id.; Harvey v. Landauer, No. 7:18-cv-00097,
2020 WL 2516583, *3-4 (W.D. Va. May 15, 2020). Select courts in the Fourth Circuit have
held that private hospital emergency room physicians do not act under color of state law in
treating a prisoner brought to the emergency room. See Jeffers, 2021 WL 849234 at *3
(collecting cases). At least one court in the Western District of Virginia, however, found that
a private emergency room physician treating a prisoner-plaintiff acted under color of state law.
See Whitten v. Atyia, No. 7:17cv00465, 2019 WL 1430005, at *8 (W.D. Va. Mar. 29, 2019),
aff'd, 776 F. App'x 817 (4th Cir. 2019), cert. denied, 140 S. Ct. 939 (2020).

In Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994), the Fourth Circuit held that "[t]he
state bears an affirmative obligation to provide medical care to its inmates; when it delegates
that duty to a physician who voluntarily assumes that obligation, that physician acts under
color of state law." Id. at 226. In so holding, the Fourth Circuit found "not inconsistent" a
district court's holding in McIlwain v. Prince William Hosp., 774 F. Supp. 986 (E.D. Va. 1991)
that "[a] hospital's mere acceptance of a prison inmate for emergency care does not transform
the hospital into a state actor." McIlwain, 774 F. Supp. at 989; Conner, 42 F.3d at 228.
McIlwain dealt with a prisoner housed at a correctional facility who was rushed to a hospital
emergency room after falling unconscious. McIlwain, 774 F.Supp. at 988. The hospital in
McIlwain had no contractual relationship with the correctional facility, and the hospital did
not routinely treat inmates. Id. at 989-990. The McIlwain court held, "[b]y seeking emergency
treatment for McIlwain, the prison did not delegate its duty to provide him with medical care;
the Hospital, in admitting McIlwain to its emergency room, did not accept any such duty." Id.
Thus, "[t]he Hospital was not 'fully vested with state authority ... to provide essential medical

care to those the State had incarcerated." Id. (quoting West v. Atkins, 108 S.Ct. 2250, 2260 (1988)). In Conner, the Fourth Circuit noted the lack of voluntary acceptance by the hospital as a distinguishing factor in favor of the McIlwain holding, adding, "[a]lthough we question the court's conclusion that the prison did not delegate its constitutional obligation to the hospital, we agree that the hospital did not accept such a duty." Id. at 222-223, 228.

In Whitten, a district court in the Western District of Virginia held that a physician treating a prisoner-plaintiff in the emergency department of a private hospital acted under the color of state law. Whitten, 2019 WL 1430005 at *8. The Whitten plaintiff was an inmate at Wallens Ridge State Prison, a correctional institution which has physicians onsite who provide medical care to inmates. See id. at *1, *3-4. The plaintiff was transported to the emergency room from Wallens Ridge after he had an altercation with another inmate. Id. at *1. At the emergency room, the plaintiff was treated by a physician who was an independent contractor with a private staffing corporation that had a contract with the hospital. Id. at *2, *8. The physician "had no relationship, contractual or otherwise, with VDOC [the Virginia Department of Corrections]." Id. at *2. The opinion does not focus on whether the hospital in Whitten had a relationship with Wallens Ridge, or whether the hospital often treated inmates from Wallens Ridge. The Whitten court was persuaded by the Fourth Circuit's holding in Conner that "when the state authorizes an independent physician to provide an inmate with medical care, that physician 'acts under color of state law even though there was no contractual relationship between the prison and the physician.'" Id. at *8 (quoting Conner, 42 F.3d at 223). The Whitten court held, "[w]hen [the doctor] provided treatment to [the plaintiff], he 'assume[d] the state's constitutional obligation to provide medical care to its prisoners' and

10

thereby 'exercise[d] power that is traditionally the exclusive prerogative of the state.'" Id. Thus, the court found that the physician acted under the color of state law.

Under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C.A. § 1395dd, a hospital that has an emergency department "must provide" medical screening and necessary stabilizing treatment for "any individual" who comes to the emergency department where "a request is made on the individual's behalf for examination or treatment." 42 U.S.C.A. § 1395dd(a), (b)(1). This mandate for care required by EMTALA distinguishes an emergency room treating physician from a physician "who voluntarily assumes … [the] obligation," Conner, 42 F.3d at 226, from the state to treat a prison inmate. Though EMTALA's mandate for care indicates the hospital's potential lack of voluntariness in treating plaintiff, the court, on the current record, is not aware of LewisGale Hospital's relationship to the state or the relevant police department, if any, nor the specific defendants' respective relationships to the hospital. Therefore, the court cannot hold at this time that defendants did not act under the color of state law when treating plaintiff. Compare Whitten, 2019 WL 1430005, at *2, *8 (finding emergency room treating physician, who "had no relationship, contractual or otherwise, with VDOC," had "'assume[d] the state's constitutional obligation to provide medical care to its prisoners' and thereby 'exercise[d] power that is traditionally the exclusive prerogative of the state'" through treating prisoner-plaintiff), with Conner, 42 F.3d at 222-223, 228 (emphasizing that the treating hospital in McIlwain did not voluntarily accept the duty to treat prisoner-plaintiff and underscoring the lack of contractual relationship between the hospital and the prison as persuasive in that finding). On a more fully developed record, defendants may reassert this argument.

11

IV.    <u>Conclusion</u>

For the reasons set forth herein, the motion to dismiss filed by defendants Kletzing, Dove, Shah and Waddle, ECF No. 32, is **DENIED**, and the motion to dismiss filed by defendants Barber, Haun, Ladenika, Frank and Taylor, ECF No. 36, is **DENIED**. An appropriate order will be entered.

Entered: March 31, 2025

Michael F. Urbanski
U.S. District Judge
2025.03.31 10:01:49
-04'00'

Michael F. Urbanski
Senior United States District Judge